In re Amir H. BARZEGAR, Debtor.

Fatemeh NAVAB, Plaintiff,

v.

Amir H. BARZEGAR, Defendant.

Bankruptcy No. 94–62135.
Adv. No. 94–6378.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Dec. 6, 1995.

As Corrected Dec. 19, 1995.

Robert L. Kirby, Roswell, Georgia, and Edward J. Maginnis, Bethesda, Maryland, for plaintiff.

David C. Farshy, Atlanta, Georgia, for debtor/defendant.

## *ORDER GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION BUT DENYING PLAINTIFF'S SUMMARY JUDGMENT MOTION*

JAMES E. MASSEY, Bankruptcy Judge.

Fatemeh Navab, the Plaintiff, moves for reconsideration of an order denying her motion for summary judgment on her section 523(a)(2) dischargeability complaint. The summary judgment motion rests on the Plaintiff's contention that this court should give collateral estoppel effect to a judgment in her favor against the Debtor, Amir H. Barzegar, obtained in 1993 in a Maryland state court. The state court found that the Defendant had committed fraud, but it based its judgment on the Defendant's default entered after he failed to give discovery and on evidence admitted at a hearing on damages not attended by the Defendant.

The Plaintiff asserts that this court erred in failing to give collateral estoppel effect to her Maryland judgment. The motion to reconsider is granted, but upon reconsideration the court reaffirms its holding that the doctrine of collateral estoppel, as interpreted by the Maryland courts, is not applicable to the facts of this case.

### *FACTS*

On June 4, 1992, Ms. Navab sued Mr. Barzegar for fraud and breach of contract in the Circuit Court of Montgomery County, Maryland based on acts that allegedly occurred in Maryland. Prior to the filing of the complaint, Mr. Barzegar had moved to Georgia. The Plaintiff obtained personal jurisdiction over him pursuant to the Maryland long-arm statute.

Mr. Barzegar filed an answer and a counterclaim and asserted affirmative defenses, including the defense that the Maryland court lacked personal jurisdiction over him. About four months after filing his answer, he moved to dismiss the case for lack of personal jurisdiction. Mr. Barzegar appeared *pro se* in the Maryland case, but he was apparently guided by counsel in his defense. His attorney in this adversary proceeding authenticated documents and verified translations of documents from Farsi to English filed in the Maryland action.

On January 7, 1993, the Maryland court entered an order, without opinion, denying the motion to dismiss. On January 25, 1993, that court entered an order on a motion filed by Ms. Navab for discovery sanctions in which it directed Mr. Barzegar to submit to discovery and indicated that if he did not, the court might enter a default judgment against him. A few days later, Mr. Barzegar responded to interrogatories and in part to a request for documents. He refused, however, to appear at a deposition scheduled on June 7, 1993 in Maryland, and Ms. Navab moved for a default judgment. On July 2, 1993, the state court struck Mr. Barzegar's answer and counterclaim and ordered that a hearing be set "on the default judgment and damages per Rule 433(a)(3)." (Order of the Circuit Court for Montgomery County, Maryland, July 2, 1993, Civil No. 91718, attached as "Exhibit 15" to Plaintiff's Motion for Summary Judgment). The record is si-

lent as to whether this order was served on the Debtor.

The Plaintiff attached as an exhibit to her summary judgment motion a notice dated October 6, 1993, apparently issued by the state court setting a hearing "on damages" for November 22, 1993. Only the name of Ms. Navab's lawyer appears on the notice; there is no evidence that this notice was served on Mr. Barzegar.

The state court conducted a hearing in the case on November 22, 1993. Mr. Barzegar did not appear. The Plaintiff testified about her damages and answered questions by the court concerning Mr. Barzegar's defenses, notwithstanding the fact that the court had already struck his answer.

The court entered a judgment against Mr. Barzegar on January 27, 1994. The judgment provided in pertinent part:

> ... that Plaintiff has proven by clear and convincing evidence that Defendant obtained money and property from Plaintiff through the intentional use of false and fraudulent representations ... that Defendant intended the Plaintiff to act in reliance upon and upon which Plaintiff did in fact reasonably rely and, accordingly, judgment is entered in favor of Plaintiff, Fatemeh Navab, and against Defendant, Amir H. Barzegar....

On February 14, 1994, the Debtor filed a petition for relief pursuant to Chapter 7 of the Bankruptcy Code and scheduled Fatemeh Navab as a creditor. On May 20, 1994, the Plaintiff filed this adversary proceeding in which she contends that the debt owed her by the Debtor is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) as one for "money and property obtained by false pretenses, a false representation or actual fraud," and that the debt is also nondischargeable under section 523(a)(6) as one arising from a willful and malicious injury. The Debtor answered and denied the material allegations of the complaint.

The Plaintiff moved for summary judgment. The thrust of the motion is that the Debtor should be collaterally estopped from litigating any of the elements of the fraud claim because the litigation in the Maryland court had resolved all of these elements in the Plaintiff's favor.

The Debtor responded that (1) the Maryland judgment is void because the Maryland court lacked jurisdiction over him, (2) the Maryland judgment is not enforceable in this court because it has not been domesticated in Georgia, (3) summary judgment is inappropriate before discovery can be completed and (4) genuine issues of material fact exist as to the existence of fraud.

This court entered an order on April 11, 1995, denying the Plaintiff's motion for summary judgment. The court held that the Maryland court had personal jurisdiction over the Debtor, that the domestication of the judgment was irrelevant to its enforceability in this court, and that the Debtor had no need for discovery prior to the adjudication of whether the Maryland judgment would be given collateral estoppel effect. The court also held, however, that issues of fact remain since Maryland law requires that a matter be actually litigated before collateral estoppel applies and there had been no actual litigation of the facts at issue.

In her reconsideration motion, Ms. Navab contends that the court concluded incorrectly that the factual findings made in the Maryland state court would not be given collateral estoppel effect under the law of Maryland.

### DISCUSSION

The doctrine of collateral estoppel is applicable to dischargeability cases in bankruptcy. *Grogan v. Garner,* 498 U.S. 279, 284, n. 11, 111 S.Ct. 654, 658, n. 11, 112 L.Ed.2d 755 (1991). If the Maryland judgment in favor of Ms. Navab is entitled to collateral estoppel effect, this court must determine that the debt of Mr. Barzegar to Ms. Navab is nondischargeable. The converse is not true. The denial of the motion would not, alone, get Mr. Barzegar off the hook.

In a case involving issues previously considered by a state court, a federal court must give preclusive effect to the state court's findings of fact to the same extent other courts in that state would do so, unless a federal statute creates an exception to the full faith and credit provisions of 28 U.S.C.

§ 1738. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 381–82, 105 S.Ct. 1327, 1332–33, 84 L.Ed.2d 274 (1985). There is no such exception in the Bankruptcy Code. *See St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 675–76 (11th Cir.1993); *Sciarrone v. Brownlee (Matter of Brownlee)*, 83 B.R. 836, 838 (Bankr.N.D.Ga.1988). Thus, the legal issue presented is whether Maryland courts applying Maryland law would bar the Defendant from relitigating the facts concerning the Plaintiff's fraud claim.

Maryland courts recognize that "as a matter of general policy, the law ordinarily precluded the relitigation of matters that have been fully and fairly litigated and finally decided between parties, by a tribunal of competent jurisdiction." *Murray International Freight Corp. v. Graham*, 315 Md. 543, 555 A.2d 502, 503 (1989). "This policy avoids multiple lawsuits, conserves judicial resources, and fosters reliance on judicial decisions by minimizing the chance of inconsistent decisions." *Pope v. Board of School Commissioners of Baltimore City*, 106 Md. App. 578, 665 A.2d 713, 720–21 (Spec.App.1995). The court in *Pope* outlined the elements of collateral estoppel as follows:

> [C]ollateral estoppel involves a three-part analysis: 1. Was the issue or fact decided in the prior litigation identical with the one presented in the subsequent litigation? 2. Was there a final judgment on the merits in the prior litigation? 3. Was the party against whom collateral estoppel is asserted a party or in privity with a party to the prior litigation? [*MPC v. Kenny*, 279 Md. 29, 367 A.2d 486 (1977) ] (quoting *Bernhard v. Bank of America*, 19 Cal.2d 807, 122 P.2d 892, 895 (1942) (Traynor, J.)).

In addition, the fact actually litigated in the prior action must have been "essential" to the judgment in that action. *Graham*, 315 Md at 550–52, 555 A.2d 502. To this end, it becomes necessary to determine whether judgment in the prior action could have been rendered without making the factual determinations at issue. *Id.* Moreover, the rule of collateral estoppel will not apply where review of the judgment in the initial action was not available to the party against whom collateral estoppel is now sought. *Id.* at 552, 555 A.2d 502.

*Pope*, 665 A.2d at 721. In *Bright v. Lake Linganore Assoc., Inc.*, 104 Md.App. 394, 656 A.2d 377, 385 (Spec.App.1995), the court of special appeals also noted the test of whether "the party against whom the plea is asserted [was] given a fair opportunity to be heard on the issue".

In *Graham*, the Maryland Supreme Court cited the rule set forth in Section 27 of the Restatement (Second) of Judgments:

> We deal here with [collateral estoppel], which has been thus described: "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Restatement (Second) of Judgments § 27 (1982).

555 A.2d at 504. Later the court referred again to the Restatement in discussing the meaning of the term "actual litigation."

> The Restatement (Second) teaches that "[w]hen an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated within the meaning of [§ 27]." Section 27 comment d. See comment e for discussion of when issues are not actually litigated.

555 A.2d at 505.

The judgment against Mr. Barzegar entered by the Maryland court meets four of the requirements for application of collateral estoppel. The parties are the same, the issues are the same, the judgment was appealable and became final 60 days after Mr. Barzegar filed his petition, 11 U.S.C. § 108(b)(2), and the determination of the issue of fraud was essential to the determination of the deceit count of the Maryland complaint. The remaining questions are whether Mr. Barzegar had a full and fair opportunity to litigate and whether the issue of fraud was decided on the merits, i.e., whether it was "actually litigated."

Plaintiff contends that a Maryland court would apply collateral estoppel because (1) the Defendant had constructive notice that facts pertaining to his liability on the claim would be litigated at a hearing on the motion for default judgment, (2) the doctrine of collateral estoppel applies to all default judgments in Maryland, and (3) collateral estoppel applies to a judgment entered by a Maryland court as a "penalty default" against a defendant who litigated for a while and then defaulted, even if it does not apply to all default judgments.

## A. *The Hearing On Damages.*

 The Plaintiff contends that this court erred in failing to hold that the Defendant had notice that the state court hearing would include a determination of liability that would constitute "actual litigation" of the facts in dispute. In the proceedings in Maryland, the state court entered a default judgment after a hearing on November 22, 1993, during which the court questioned a witness, Ms. Navab, and found facts concerning Mr. Barzegar's liability. In her summary judgment motion in this court, the Plaintiff contends that this hearing represented the "actual litigation" required for the application of collateral estoppel. Though there is no evidence that he received notice of the hearing, the court assumes he did, Mr. Barzegar having raised no issue about his receipt of the notices. Nonetheless, it does not appear that Mr. Barzegar had a full and fair opportunity to be heard on the merits of the case.

The order and notice purportedly served on Mr. Barzegar were defective because they did not apprise him of what was at stake. They failed to make it clear that the merits of the issue of liability, as well as the issue of damages were to be addressed, at an evidentiary hearing.

The Plaintiff argues in her motion for reconsideration that the reference in the state court's July 2, 1993, order to Rule 433(a)(3) placed Mr. Barzegar on notice that the hearing on November 22, 1993 might include "a determination as to liability" and hence that a judgment entered after that hearing would have collateral estoppel effect. Rule 2–433(a) of the Maryland Rules of Procedure, to which the Maryland court referred in its July 2, 1993, order striking Mr. Barzegar's answer, provides various sanctions for abuses of discovery. The Rule states, in pertinent part, that:

> Upon a motion filed under Rule 2–432(a), the court, if it finds a failure of discovery, may enter such orders in regard to the failure as are just, including one or more of the following:
>
> . . . . .
>
> (3) an order striking out pleadings or parts thereof ... or entering a judgment by default that includes a *determination as to liability* and all relief sought by the moving party.

Maryland R.Civ.P. 2–433(a) (emphasis added).

 This court disagrees that the reference to Rule 2–433 put the Defendant on notice that there would be a hearing on the merits of the dispute. The whole point of such a rule is to avoid the necessity of litigating the merits. The rule conveys the message that the purpose of the hearing is to determine whether there has in fact been a discovery default, which, if found, may result in entry of a default judgment. In stating that a judgment by default includes a determination of liability, the rule merely defines what a default judgment is. It does not mean that in deciding whether to enter a default judgment, a court must, or even may, determine liability by holding a hearing on the merits, thereby pinning an "actual litigation" label on what would essentially still be a default judgment.[1]

---

1. Maryland Civil Rule 2–613(e) provides for entry of a default judgment when a defendant fails to respond to a complaint. Like Rule 2–433, it allows a court to conduct a hearing and make a "determination as to liability." Under the Plaintiff's reading of this phrase, notice of a hearing on a default judgment motion is notice that the court might hold a trial on the merits. If the defendant showed up, ready for trial and the court held a hearing, the court could presumably enter a judgment against the plaintiff under Ms. Navab's bizarre reading of the phrase a "determination as to liability." One wonders if the typical plaintiff seeking a default judgment in Maryland would read the rule as requiring her to prepare for a full scale trial. Very doubtful.

### B. *Preclusive Effects of Default Judgments under Maryland Law.*

■ Ms. Navab urges the court to reconsider its April 11, 1995 decision that there was no "actual litigation" in the Maryland court and to hold instead that Maryland law grants collateral estoppel effect to all default judgments. She asserts that a defendant's opportunity to litigate a case is equivalent to "actual litigation" within the meaning given to that phrase by Maryland law. In this connection she cites the *Maryland Law Encyclopedia* on the conclusiveness of default judgments:

> The doctrine of conclusiveness of judgment applies to a judgment by default with the same validity and force as to a judgment rendered on a trial of issues, provided such judgment is regular and valid. A judgment by default regularly entered is conclusive as to every fact necessary to uphold it, including jurisdiction of the court and the right to recover, although the amount of recovery remains to be ascertained.

13 *Maryland Law Encyclopedia*, Judgments, § 205. She also cites several cases that make similar statements, the most recent ones being *Millison v. Ades of Lexington, Inc.*, 262 Md. 319, 277 A.2d 579, 584 (1971) and *Capobianco v. Gordon*, 19 Md.App. 662, 313 A.2d 517, 520–21 (Spec.App.1974). From this language, Ms. Navab jumps to the conclusion that the doctrine of collateral estoppel bars a defendant from relitigating the facts asserted on a cause of action resolved by a default judgment.

The authorities relied on by the Plaintiff address aspects of the law of *claim* preclusion—res judicata, rather than *issue* preclusion—collateral estoppel. She confuses the two concepts. In *Millison*, a defendant appealed a judgment entered by default, challenging both the lower court's assessment of damages and the determination of liability. Although the court of appeals held that the trial court had improperly assessed damages, it affirmed the default judgment on liability, stating:

> Like every other judgment, [a default judgment] is conclusive of every fact necessary to uphold it ... This Court cannot

go behind the judgment by default to examine into and determine upon the validity of the cause of action upon which suit is instituted.

*Millison,* 277 A.2d at 584.

In *Capobianco,* the court refused to vacate a default judgment on the ground of mistake and held that the default judgment was final on the merits of the complaint. 313 A.2d at 539. Thus, *Millison,* and *Capobianco* rebuffed the attempts of the respective defendants in those cases to circumvent the *claim* preclusive effect of the default judgments entered against them. These cases do not involve *issue* preclusion.

■ Maryland courts, no less than those in other states, employ collateral estoppel in order to preserve the resources of the courts and the parties, to obtain consistent results and to prevent harassment of opposing parties. The law in most jurisdictions recognizes a defendant's right to forego actual litigation of an issue where the costs are too high or the rewards too low, without being precluded from litigating the same issues of fact on a different claim against which it might be more worthwhile for the defendant to mount a defense. The Restatement (Second) of Judgments states this principle as follows:

> There are many reasons why a party may choose not to raise an issue, or to contest an assertion, in a particular action. The action may involve so small an amount that litigation of the issue may cost more than the value of the lawsuit. Or the forum may be an inconvenient one in which to produce the necessary evidence or in which to litigate at all. The interests of conserving judicial resources, and of avoiding oppression or harassment of the adverse party are less compelling when the issue on which preclusion is sought has not actually been litigated before.

Restatement of Judgments 2d § 27, Comment (e).

Adopting the Plaintiff's argument would undercut an efficient method of resolving disputes. Having no way to foresee the potential uses to which facts found by default might be put to use in the future, litigants

might respond to the uncertainty with useless yet expensive litigation, thereby generating in the long run a genuine frustration with the fairness of the judicial process. Perversely, a rule giving collateral estoppel effect to default judgments, ostensibly to save judicial resources, might have the opposite effect.

### C. Penalty Defaults.

■ This dispute, of course, does not involve a default judgment by a defendant who simply made a decision not to appear at all in a proceeding. In the Maryland case, Mr. Barzegar responded to the complaint, filed a counterclaim, challenged the court's personal jurisdiction by affirmative defense and by a motion for dismissal, and answered discovery requests.

The Plaintiff contends that Mr. Barzegar's participation amounted to a submission of the issues for determination by the Maryland court. In such a case, she maintains, the determination would be given collateral estoppel effect by a Maryland court, even if a determination based on a default for failing to appear at all would not. Unfortunately, there is no Maryland case squarely on point.

The question of collateral estoppel effect arising from "penalty defaults" or default judgments entered against defendants who file answers but later refuse to participate in litigation, has recently come to life in the federal courts. The Ninth and Eleventh Circuits and a bankruptcy court in the Fifth Circuit have held that, under certain circumstances, collateral estoppel may result from a penalty default.

Ms. Navab cites two of those cases in which the courts applied collateral estoppel to a default judgment entered after the defendants had engaged in prior litigation and then dropped out. *Federal Deposit Insurance Corp. v. Daily, (In re Daily)*, 47 F.3d 365 (9th Cir.1995), and *Crain v. Limbaugh (In re Limbaugh)*, 155 B.R. 952 (Bankr. N.D.Tex.1993). These cases are distinguishable from the present dispute.

In *Limbaugh,* the bankruptcy court gave collateral estoppel effect to a default judgment entered against the debtor in litigation in a state court. In the state court case, the defendant, represented by counsel, had refused to produce documents in connection with her deposition. The plaintiff moved to compel discovery. The state court directed her to give discovery and warned that her failure to do so would lead to sanctions, including the striking of her pleadings. The defendant disobeyed the order, and the court held a hearing on sanctions at which it struck her answer. A month later, the state court held a hearing on damages, at which the defendant appeared through counsel and participated by cross-examining witnesses. *Limbaugh,* 155 B.R. at 955. The court then entered a default judgment for the damages determined.

In applying collateral estoppel, the bankruptcy court held that "this State Court judgment is entitled to greater weight *than a post-answer default judgment (where a defendant did not appear)* .... Though liability was judicially admitted as part of the default judgment, the record reflects the trial court examined evidence which bore upon both liability and damages, and resolved both issues in Plaintiff's favor." 155 B.R. at 958 (emphasis added).

*Limbaugh* is readily distinguishable from this case. Indeed, the *Limbaugh* court distinguished it. In that case the defendant participated in a hearing at which the state court considered the merits and ruled in favor of the plaintiff. For this reason, the bankruptcy court said that it gave greater weight to that judgment, though technically a default as to liability, than the court would have given it had the defendant failed to appear. Here, the Defendant was absent.

In *Daily,* the plaintiff successfully invoked the doctrine of collateral estoppel against a defendant who had participated for two years in prior litigation and had deliberately attempted to hinder its resolution. In refusing to permit the defendant to relitigate the issues determined in the prior suit, the court of appeals emphasized the extent to which a party's motives for engaging in and withdrawing from a prior case are relevant:

A party who *deliberately precludes* resolution of factual issues through normal adjudicative procedures may be bound, in sub-

sequent, related proceedings involving the same parties and issues, by a prior judicial determination reached without completion of the usual process of adjudication. In such cases the "actual litigation" requirement may be satisfied by *substantial participation* in an adversary contest in which the defendant is afforded a reasonable opportunity to defend himself on the merits but chooses not to do so.

47 F.3d at 368 (emphasis added).

The Court of Appeals for the Eleventh Circuit very recently addressed a similar situation in *Bush v. Balfour Beatty Bahamas (In re Bush)*, 62 F.3d 1319 (11th Cir.1995). There, the defendant in a case before a district court had actively engaged in discovery for several months by submitting requests for documents. Although he answered some discovery requests, over the course of approximately one year, he failed repeatedly to respond to other discovery requests. He failed to show up for his deposition. The plaintiff moved for discovery sanctions, and the defendant filed a response to the motion accompanied by an affidavit explaining his absence from the deposition. After the defendant failed to appear at a pretrial conference at which arguments on the motion for sanctions were heard, the court entered a default judgment against him.

The defendant then filed bankruptcy. The plaintiff instituted an adversary proceeding to determine the dischargeability of the debt and asserted that collateral estoppel prohibited the debtor from relitigating the facts decided by the district court in the default judgment. Relying on *Daily*, the Eleventh Circuit held that the level of the defendant's participation in the prior proceeding was sufficient to give collateral estoppel effect to the judgment:

> We find *Daily* persuasive. Where a party has substantially participated in an action in which he had a full and fair opportunity to defend on the merits, but subsequently chooses not to do so, and even attempts to frustrate the effort to bring the action to judgment, it is not an abuse of discretion

for a district court to apply the doctrine of collateral estoppel.

*Bush*, 62 F.3d at 1325.

Both *Bush* and *Daily* are, of course, not binding in this determination, which is made under Maryland law. Nonetheless, they must be examined carefully to address Ms. Navab's argument that the combination of Mr. Barzegar's opportunity to litigate and his participation in the state court case was sufficient to give collateral estoppel effect to the default judgment.

The tests in *Bush* and *Daily* of "deliberately precluding" litigation of issues or "substantial" participation in the adversary process are to a large extent subjective. They paint no bright line. Indeed, the court in *Bush* framed its holding in terms of whether the trial court abused its discretion.

> We note that whether to allow issue preclusion is within the sound discretion of the trial court. *Parklane Hosiery Company, Inc. v. Shore*, 439 U.S. 322, 331, 99 S.Ct. 645, 651–52, 58 L.Ed.2d 552 (1979). The presence of mitigating factors in another case might cause a court to exercise discretion to deny preclusion to a default judgment even if the doctrine's formal elements are otherwise met. In some cases, the amount of money at stake or the inconvenience of the forum might disincline a defendant to offer a defense.

*Bush*, 62 F.3d at 1325, n. 8. A proper analysis therefore requires a careful comparison of the facts of *Bush* and *Daily* with this case.

In *Daily* and *Bush*, there was no challenge to the courts' jurisdiction. Mr. Barzegar dropped out of the Maryland litigation not long after his motion to dismiss was denied. In the federal cases, the defendants had actively participated in the litigation by demanding discovery from the other side. Mr. Barzegar answered some discovery but took none himself.

In *Bush*, the defendant apparently resided in the district where the trial court sat. At least the court of appeals observed that "the forum was convenient." *Bush*, 62 F.3d at 1325, n. 8. In *Daily*, the defendant had filed bankruptcy in the District of Hawaii but consented to jurisdiction of the U.S. District

Court in Kansas. *Daily*, 47 F.3d at 367, n. 2. Mr. Barzegar neither resided in Maryland nor consented to the jurisdiction of that court; he resided in Georgia and would have had to journey to Maryland to avoid the discovery default that led to the default judgment. Ironically, Ms. Navab has reported to the court through counsel that she will not try this case on the merits because it is too expensive for her to travel to Georgia.[2]

There was evidence in *Daily* and *Bush* that the defendants had obstructed the judicial process during discovery and had misused the courts and their opponents. There is no evidence of obstruction on the part of Mr. Barzegar in the sense of pretense to having the Maryland court decide the issue manifested by participation in the process over a long period, followed by prolonged foot dragging. Mr. Barzegar dropped out early, within one month of the decision on his motion to dismiss for lack of personal jurisdiction. His participation, such as it was, was arguably aimed at securing a dismissal before litigation on the merits of the dispute had to go forward. Although he answered some discovery after the court denied his motion for dismissal, it cannot be said from the record in this case that the Defendant deliberately tried to preclude litigation of the disputed factual issues. Unlike the *Limbaugh* case, the Defendant did not appear at a hearing on the merits of the case and cross-examine witnesses through a lawyer.

■ *Bush* and *Daily* are not only distinguishable on their facts, but they also apply an exception to the general rule of collateral estoppel that has yet to be applied in a reported Maryland case. Maryland law holds that collateral estoppel is a device to conserve judicial resources. Application of the doctrine in a proper case saves money and time for the courts and the parties that would be wasted if a court had to determine for a second time facts already established. The proper case, however, is one in which the parties submit the disputed issue for determination and the court adjudicates it.

In *Bush* and *Daily*, the courts precluded further litigation because of misconduct of the litigants. The parties in those cases had not submitted the disputed issues for determination to the trial courts, and the trial courts did not determine them on the merits. There was no "actual litigation" in those cases as that term has been defined by the Maryland Supreme Court in *Murray International Freight Corp. v. Graham*, 315 Md. 543, 555 A.2d 502, 505 (1989).

A portion of comment e to section 27 of the Restatement (Second) of Judgments, to which comment the Maryland Supreme Court generally referred in *Graham*, acknowledges the possibility of preclusion based upon a party's conduct in prior litigation.

> It is true that it is sometimes difficult to determine whether an issue was actually litigated; even if it was not litigated, the party's reasons for not litigating in the prior action may be such that preclusion would be appropriate. But the policy considerations outlined above weigh strongly in favor of nonpreclusion, and it is in the interest of predictability and simplicity for such a result to obtain uniformly.

Restatement (Second) of Judgments, § 27, comment e (1982). Thus, the Restatement concedes, though without example and with pointed reservation, the possibility of issue preclusion based upon conduct of a party.

Significant participation in litigation followed by withdrawal at a critical juncture might be viewed as a kind of admission, thereby serving the same function as actual litigation. The litigant, by withdrawing when the test is about to be administered, confirms what the court later finds the test would have shown.

By contrast, the core of the inquiry where there is no adjudication following an adversary process is not on whether the facts deemed to be true are authenticated in some way. Instead, the litigant loses because he has used up his ration of judicial resources in

---

**2.** The Plaintiff made no effort to answer discovery even before she reported through counsel that she would not come to Georgia to attend a trial. This court previously ruled that her deposition, which the Defendant had noticed, had to be taken in Maryland, partially in response to her financial constraints.

the first case. By declining to complete the litigation process after significant expenditure of resources, he is estopped to continue the process, even in a different case seeking different relief on a different claim.

Estoppel based on conduct has the same goal of economy and the same effect as estoppel based upon adjudication of issues in an adversary setting. The goal of consistency is not a factor in estoppel based on conduct, however. Except insofar as conduct is treated as an admission, preclusion based on prior conduct rests on a systemic need to impress on litigants the importance of not abusing the judicial process. In that way, issue preclusion based on prior conduct is more like its cousin, judicial estoppel. *Compare Matter of Cassidy*, 892 F.2d 637, 640 (7th Cir.1990), *cert. denied sub nom. Cassidy v. C.I.R.*, 498 U.S. 812, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990) (defendant who is allowed, at his own urging, to raise issue for the first time on earlier appeal is judicially estopped from challenging its determination, even though collateral estoppel was incorrectly applied to earlier resolution).

Maryland courts might well be sympathetic to restricting a litigant's ability to contest factual issues that it had a full and fair opportunity to litigate in a proceeding prematurely ended, after the exhaustion of substantial judicial resources, by the litigant's own dilatory tactics designed to avoid a decision on the merits. Nevertheless, it is most unlikely that Maryland courts, given their emphasis on the need for "actual litigation," *Murray International Freight Corp. v. Graham*, 315 Md. 543, 555 A.2d 502 (1989), *Pope v. Board of School Commissioners of Baltimore City*, 106 Md.App. 578, 665 A.2d 713 (Spec.App.1995), would insist that a trial court apply collateral estoppel in the absence of actual litigation, except in the most egregious situations.

Here, the record does not show the conscious and long standing waste of resources that was apparent in *Bush* and *Daily*. Nor was the Debtor's participation in this case as obstructive as or as substantial as the defendants in those cases or in *Limbaugh*. One gets no sense that the Debtor's conduct signaled an admission that the allegations made by the Plaintiff were true. The court concludes that the Maryland courts would not find in *Bush*, *Daily* or *Limbaugh* arguments or fact patterns that when compared to this case would persuade those courts to apply collateral estoppel or judicial estoppel in this dispute. Nor would they regard the failure to apply collateral estoppel in the circumstances of this case as an abuse of discretion.

For the foregoing reasons, it is

ORDERED that the Plaintiff's motion for reconsideration is GRANTED but, upon reconsideration, the Plaintiff's motion for summary judgment is DENIED.